IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                                   :
SANDRA JOHNSON CARTER, Personal
Representative of the Estate of    :
Michael Anthony Carter, Jr.
                                   :

    v.                             :    Civil Action No. DKC 21-0311

                                   :

LINDSAY CORPORATION, et al.
                                   :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this wrongful death case are: (1) a partial motion to dismiss filed by Defendants Lindsay Corporation, Lindsay Transportation, Inc. ("Lindsay Transportation"), and Safe Technologies, Inc. ("Safe Technologies") (collectively "Lindsay Defendants"), and (2) a partial motion to dismiss filed by Defendant Collinson, Inc. ("Collinson"). (ECF Nos. 12; 15).[1] The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the Lindsay Defendants' motion will be granted in part and denied in part and Collinson's motion will be denied.[2]

---

[1] Lindsay Transportation and Safe Technologies contend they were misnamed in the complaint. Lindsay Transportation contends it is the same entity as Barrier Systems, Inc. (ECF No. 12, at 1).

[2] Lindsay Defendants also move to strike Plaintiff Sandra Johnson Carter's Response in Opposition because it was not timely

I.   **Background**

According to the complaint, on the morning of February 7, 2018, Plaintiff Sandra Johnson Carter's son, Michael Carter, Jr., was killed when his car left U.S. Route 13 in Maryland and struck the end of the guardrail at the road's edge.  (ECF No. 1, ¶ 25). Michael was an 18-year-old private first class in the United States Marine Corp.  (*Id.*, ¶ 1).  The guardrail component his car hit was an "X-Lite end terminal" allegedly designed, manufactured, sold, and installed by Defendants.  (*See id.*, ¶¶ 11, 18, 25).  It was intended to telescope back thirty-to-fifty-feet, absorb the car's energy, and bring it to a stop.  (*Id.*, ¶¶ 26, 28).  Instead, it "pierced through the door" and killed Michael.  (*Id.*, ¶ 25).

Ms. Carter filed this lawsuit nearly three years later, on February 6, 2021.  (ECF No. 1).  She names twelve defendants.  She alleges that one individual, Dallas James, and seven interrelated companies, Valmont Corporation, Valmont Transportation, Armorflex Corp. ("Armorflex"), Lindsay Corporation, Lindsay Transportation, Safe Technologies, and Barrier Systems, Inc. ("Barrier Systems") (collectively "Manufacturer Defendants") designed, manufactured,

---

filed.  (ECF No. 24).  Their motion will be denied, but Plaintiff is admonished to file timely going forward.  Defendant L.S. Lee, Inc. ("L.S. Lee") moves to join arguments made in the two motions to dismiss and in Lindsay Defendants' reply and motion to strike. (ECF Nos. 16; 26).  Its motions will be granted.

and sold the X-Lite.  (*Id.*, ¶¶ 2-16).[3]  (This opinion refers to the three companies currently participating in the lawsuit—Lindsay Corporation, Lindsay Transportation, and Safe Technologies—as the "Lindsay Defendants."  Ms. Carter refers to all eight Manufacturer Defendants as "Lindsay Defendants," (*id.*, ¶ 17), but Dallas James, Valmont Corporation, Valmont Transportation, Armorflex, and Barrier Systems have not appeared in this case.)  In addition, Ms. Carter alleges that one of four companies, Green Acres Contracting ("Green Acres"), Collinson, L.S. Lee, or Penn Line Services ("Penn Line") (collectively "Installer Defendants"), installed the X-Lite end terminal that killed Mr. Carter, Jr.  (*Id.*, ¶ 18).

Ms. Carter alleges myriad failures by the Manufacturer Defendants.  (*See* ECF No. 1, ¶¶ 27-45).  Chief among these are two design defects.  First, the X-Lite relies on "shear bolts that don't always shear, or that shear out of sequence[.]"  (*Id.*, ¶ 27).  As a result, it "allows the guardrail to be separated from the posts," and "is inadequately designed to contain the separated guardrail."  (*Id.*).  This telescoping failure "leaves exposed blunt guardrail ends to spear vehicles during collisions, posing a grave risk of death or amputation[.]"  (*Id.*).  Second, even if the end

---

[3] The complaint names Valmont Corporation and Valmont Transportation in the caption.  (ECF No. 1, at 1).  Ms. Carter refers to them at times as Valmont Industries, Inc. and Valmont Highway.  (*E.g.*, *id.*, ¶¶ 2, 5).  Valmont Industries, Inc. waived service.  (ECF No. 14-7).  This opinion uses the caption names.

3

terminal telescopes as designed, it does not absorb enough energy to stop the vehicle before reaching the end of the system, leaving enough momentum that the vehicle can still be "pierced by the blunt end of the guardrail or [] rollover." (*Id.*, ¶ 28).  Ms. Carter also alleges that the Manufacturer Defendants deceived regulators throughout the county about these and other failures, and that they failed to account for or properly disclose these failures throughout the X-Lite's manufacture and sale. (*Id.*, ¶¶ 33-45; *see, e.g.*, *id.* ¶¶ 48, 57).  She alleges that the Installer Defendants knew or should have known that the X-Lite was unsafe when they installed it. (*Id.*, ¶¶ 86-90)

Ms. Carter asserts ten claims, including two requests for punitive damages, (ECF No. 1, at 29-30 (Counts IX and X)).  This includes four core claims brought in duplicate as part of a survival action and part of a wrongful death action.  Ms. Carter advances the survival action as the personal representative of her son's estate and the wrongful death action as Mr. Carter, Jr.'s mother and "on behalf of" the statutory wrongful death beneficiaries. (*See e.g.*, *id.* at 1, 15, 18).  The formal counts are as follows: (I and II) negligence against the Manufacturer Defendants, (III and IV) strict liability against the Manufacturer Defendants, (V and VI) breach of implied warranty against the Manufacturer Defendants, and (VII and VIII) negligence against the Installer Defendants. (*Id.*, at 15, 18-19, 22-23, 27, 29).  Ms.

Carter requests compensatory damages in the amount of $5 million plus interest and costs, and punitive damages against the Manufacturer Defendants.  (*Id.*, at 18, 29-30).

The Lindsay Defendants moved to dismiss all claims against the Manufacturer Defendants (Counts I-VI, IX, and X).  (ECF No. 12).  Collinson moved to dismiss the claims against the Installer Defendants (Counts VII-VIII). (ECF No. 15).  Ms. Carter responded in opposition and the Lindsay Defendants and Collinson replied.  (ECF Nos. 23-25).  Collinson adopts the same arguments as the Lindsay Defendants.  This opinion therefore attributes all arguments for dismissal to the Lindsay Defendants.  They argue that Ms. Carter cannot (1) bring her survival claims because her son's estate is closed and, as a "small estate," it cannot have more than $50,000 in assets, (2) maintain her wrongful death claims because she did not properly identify the statutory beneficiaries as required under Maryland law, or (3) seek punitive damages because they are barred under Maryland law.

Separately, the status of service on several defendants, including some who have not entered appearances, remains unclear. This issue is addressed at the end of this opinion, after the merits of the pending motions are considered.

## II.   Motions to Dismiss

### A.   Standard of Review

The Lindsay Defendants contend that all three challenges are jurisdictional and purport to move for dismissal under Fed.R.Civ.P. 12(b)(1).  (ECF No. 12, at 5-6).  Only its arguments that Ms. Carter lacks standing to bring, and cannot satisfy the amount-in-controversy requirement for, the survival action raise jurisdictional concerns.   Whether Ms. Carter complied with Maryland procedural rules applicable to wrongful death claims or may request punitive damages under Maryland law do not go to this court's subject matter jurisdiction.   As discussed below, the Maryland Court of Appeals has rejected any jurisdictional basis for the former, and the Lindsay Defendants point to nothing suggesting jurisdictional grounds for the latter.   Those arguments will be reviewed under the Fed.R.Civ.P. 12(b)(6) standard for failure to state a claim.

Questions of subject matter jurisdiction must be decided first because they concern the court's authority to hear the case. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019). The plaintiff bears the burden of proving that subject matter jurisdiction exists.   *Demetres v. East West Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).   Defendants may challenge subject matter jurisdiction in one of two ways: facially or factually. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation

omitted).   Where, as here, they make a factual challenge, the complaint is not presumed to be true, and the court may consider other evidence and resolve disputed issues of fact.  *Id.*

A 12(b)(6) motion tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).  A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

## B.  The Estate's Capacity to Initiate a Survival Action and the Impact of its Asset Cap on Diversity Jurisdiction

The Lindsay Defendants argue that no one has capacity or standing to sue on behalf of Mr. Carter, Jr.'s estate because it

7

is closed.  (ECF Nos. 12, at 6-7; 24, at 6-8).  They also suggest that Ms. Carter does not have the authority to initiate a suit because her powers as personal representative terminated when the estate closed.  Last, they argue that diversity jurisdiction is defeated because Mr. Carter, Jr.'s estate is a small estate under Maryland law and is capped at $50,000 in assets.  As discussed below, these arguments misunderstand Maryland estate law and incorrectly suggest it controls federal court jurisdiction.

Of course, no one may sue on behalf of a "non-existing client," such as an estate that has not been created.  *See Brantley v. Fallston Gen. Hosp.*, 333 Md. 507, 511-12 (1994).  Nor may anyone sue on behalf of an existing estate unless he or she is its personal representative.  *Rosebrock v. E. Shore Emergency Physicians, LLC*, 221 Md.App. 1, 12 (2015).  But whether a personal representative of an existing estate may initiate suit does not turn on whether the estate, small or otherwise, is open or closed.  *See* Md. Code Ann., Estates & Trusts, § 5-607 (stating that all provisions of estate law apply to small estates unless explicitly contradicted in the small estate subtitle).

Generally speaking, a personal representative's power to "prosecute . . . actions, claims, or proceedings in any appropriate jurisdiction" requires only that he or she do so "for the protection or benefit of the estate[.]"  Md. Code Ann., Estates & Trusts, § 7-401(y)(1).  Specific to survival actions, a personal

representative can only bring a claim "which the decedent might have commenced or prosecuted," with certain exceptions not relevant here.  *Id.*; *see also United States v. Misc. Jewelry*, 667 F.Supp. 232, 237 (D.Md. 1987) ("It is hornbook law that a personal representative may commence or pursue any personal action at law or equity which the decedent might have brought which will inure to the benefit of the estate." (citations omitted)).  Nowhere does the statute or Maryland caselaw suggest that the power to sue is contingent on the estate not having approved a final account.

Nor does the closure of an estate necessarily end a personal representative's appointment or alter his or her powers.  Absent suspension, resignation, or removal, only "[t]ermination ends the right and power pertaining to the office of personal representative as conferred by will or by the estates of decedents law."  *See* Md. Code Ann., Estates & Trusts, § 6-303(a).  Termination can be requested when an estate is closed, but that is not required, and, even if requested, it does not take effect until all assets are distributed.  *Id.* § 10-101(a)(2),  (b)(1); Md. Rule 6-421.  A personal representative can also wait and petition to be terminated at a later date.  Md. Code Ann., Estates & Trusts, § 10-101(b)(1); *see also* Md. Rule 6-421.  Unlike the Uniform Probate Code, nothing in the Maryland statute requires this petition to be filed, or automatically terminates an appointment after a specific period of time.  *Compare* Md. Code Ann., Estates & Trusts § 10-101(b)(1) ("[A]

personal representative may . . . petition the court for an order to terminate[.]"), *with* Unif. Probate Code § 3-610(a) (2019) (appointment terminates "one year after the filing of a closing statement").

In fact, Maryland law expressly envisions that personal representatives who have not been terminated will retain the power to act on behalf of an estate even after it is closed.  For example, Maryland Rule 6-422(a) states that, "[w]hen property is discovered after an estate has been closed, a personal representative whose appointment has not been terminated . . . may file a supplemental inventory and an account."  As that rule suggests, closing an estate does not always end its business.  Personal representatives must sometimes continue to distribute assets after a final account has been approved, and deal with new complications.  *See* Gibber on Estate Administration §§ 8.46-8.47 (2013) (describing personal representatives' varying considerations when deciding whether to petition for termination upon closure of an estate).

Therefore, the fact that Mr. Carter, Jr.'s estate is closed, as the Lindsay Defendants assert and Ms. Carter does not dispute, does not mean that suits cannot be filed on its behalf.  Nor does it mean that Ms. Carter was terminated as its personal representative or otherwise lost her power to sue.  Ms. Carter alleges that she sues in her capacity as the estate's personal representative and attests that she continues to hold that

10

position.   (ECF No. 1, at 1; ECF No. 23-1, ¶ 2).   She did not request to be terminated when the estate closed or at any other time.  (ECF No. 23-1, ¶ 2).  Ms. Carter has the capacity to bring this lawsuit on behalf of her son's estate.

The Lindsay Defendants' fallback argument—that the amount in controversy requirement for diversity jurisdiction is defeated because the estate's assets are capped—also fails.  The argument is premised on the idea that Ms. Carter will need to open a new estate should she prevail in this suit because she requests damages greater than the $50,000 cap on small estate assets.  The argument and its underlying premise have several flaws.

First, the argument attempts to make state probate law controlling over federal subject matter jurisdiction.  "In most cases, the sum claimed by the plaintiff controls the amount in controversy determination."  *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quotation omitted).  To defeat this amount, defendants shoulder the "heavy burden" to show "the legal impossibility of recovery" of an amount greater than $75,000.  *Id.* (quotation omitted). Ms. Carter has requested more than $5 million in damages.  The Lindsay Defendants have not carried their burden to show that recovery in that amount is legally impossible.  That the estate may not legally be able to distribute assets in that amount in its current form does not mean that the estate is not entitled to it or that it cannot hold that amount.

If their argument goes to anything, it is again the standing or capacity of the estate in question.  But Lindsay Defendants appear to misread Maryland law on small estates.  While Ms. Carter may not be able to distribute the assets obtained in this suit under the small estate rules, any possible need to create a new estate would likely arise after this suit ended because the value of the estate will not exceed $50,000 until the claims in this case are liquidated.  Md. Code Ann., Estates & Trusts § 5-605(c) (focusing on whether "the gross value of all property of the decedent" "increases . . . to more than $50,000").

Furthermore, it's not clear that a new estate would have to be created.  It appears that the existing estate would either change form or be incorporated into new proceedings.  Maryland statute states only that, "any further proceeding may not be had under [the small estate] subtitle, but the administration shall proceed under the other provisions of the states of decedents law." Md. Code Ann., Estates & Trusts § 5-605(c).  Maryland Rule 6-212 instructs that, in such cases, "administration as a small estate shall be discontinued and administration shall proceed by the filing of a Petition for Administrative Probate [] or Judicial Probate [], and the Notice of Appointment [] shall recite the existence of the prior small estate proceeding." *See also* Gibber on Estate Administration § 13.40 (2013).  So long as Ms. Carter also serves as personal representative of the estate in any new

proceeding, nothing required under Maryland law would present an insurmountable obstacle to this court's jurisdiction over survival claims brought in Mr. Carter, Jr.'s stead.

The Lindsay Defendants' and Collinson's motions to dismiss the survival claims brought on behalf of Mr. Carter, Jr.'s estate, Counts I, III, V, VII, and IX, will be denied.

### C.   Wrongful Death Action Pleading Requirements

The Lindsay Defendants argue that Ms. Carter cannot maintain the wrongful death claims because she did not properly identify the statutory beneficiaries as required under Maryland law. (ECF Nos. 12, at 8-9; 24, at 9-10). They characterize these requirements as a "condition precedent" to suit for which a defect has "jurisdictional magnitude." (ECF No. 12, at 9). As discussed further below, that characterization is wrong. Although Ms. Carter's complaint does not satisfy the requirements, they are procedural in nature and can be excused.

The Maryland Wrongful Death Act expressly provides a potential remedy "for the benefit of the wife, husband, parent, and child of the deceased person." Md. Code Ann., Cts. & Jud. Proc. § 3-904(a)(1); *see also Spangler v. McQuitty*, 449 Md. 33, 53-54 (2016). It mandates, however, that "only one action [for wrongful death] lies in respect to the death of a person." Md. Code Ann., Cts. & Jud. Proc. § 3-904(f). This rule is "designed to protect a defendant from being vexed by several suits

13

instituted by or on behalf of different equitable plaintiffs for the same injury, when all the parties could be joined in one proceeding." *Univ. of Md. Med. Sys. Corp. v. Muti*, 426 Md. 358, 374 (2012) (quotation omitted).

To that end, a wrongful death plaintiff must satisfy several requirements embodied in Rule 15-1001. "All persons who are or may be entitled by law to claim damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action." Md. Rule 15-1001(b). "The words 'to the use of' shall precede the name of any person named as a plaintiff who does not join in the action." *Id.* The complaint must also state "the last known address of each use plaintiff" and "that the party bringing the action conducted a good faith and reasonably diligent effort to identify, locate, and name as use plaintiffs all individuals who might qualify[.]" Md. Rule 15-1001(c). Use plaintiffs must be served with a copy of the complaint and notice that they may intervene. Md. Rule 15-1001(d). These requirements are procedural and not jurisdictional. *Muti*, 426 Md. at 379-80. "The court may not dismiss a complaint for failure to join all use plaintiffs if the court finds that the party bringing the action made such a good faith and reasonably diligent effort" to identify, locate, and name use plaintiffs. Md. Rule 15-1001(c).

Ms. Carter's complaint clearly does not satisfy the formal requirements of Rule 15-1001 as to use plaintiffs. She does not

14

place the phrase "to the use of" before the solitary statutory
beneficiary named in the complaint that is not a party to the suit—
Michael Carter, Sr., her former husband and Mr. Carter, Jr.'s
father.  She does not include a last known address for him.  And
she does not allege that she conducted "a good faith and reasonably
diligent effort" to locate him.  She also has not notified him of
the suit.

The question, then, is whether she nevertheless made "a good
faith and reasonably diligent effort" to identify, locate, and
name him.  Everything in the record suggests she did.  She names
Mr. Carter, Sr. in the complaint.  She communicates the idea that
the suit is "to the use of" Mr. Carter, Sr. because she purports
to sue "on behalf of wrongful death beneficiaries Sandra Johnson
Carter and Michael Anthony Carter Sr."  (ECF No. 1, at 1
(capitalization omitted)).   In addition, in an affidavit
accompanying her response in opposition, Ms. Carter attests that
she "conducted a good faith and diligent effort to find Michael
Sr. but ha[s] not been able to locate him." (ECF No. 23-1, ¶ 8).
Mr. Carter, Sr. "abandoned" her before his son was born and "never
had anything," or wanted anything, to do with his son.  (*Id.*, ¶¶
4-5).   She hasn't kept in touch with him, has no contact
information for him, and has not found anyone with the same name
fitting his age or other descriptions of him in her search.  (*Id.*,
¶¶ 7-8).  The Lindsay Defendants do not dispute any of this, and

15

Ms. Carter's complaint therefore "may not" be dismissed.  *See* Md. Rule 15-1001(c).

Permitting Ms. Carter to proceed is essentially compelled by *Muti*, which clarified several wrongful-death-action requirements and inspired Rule 15-1001's current form.  There, plaintiffs filed a wrongful death suit shortly before the statute of limitations ran without naming (at all) the decedent's adopted son who they had not seen in years and did not know how to reach.  426 Md. at 363.  After discovery, the defendant moved to dismiss the action for failure to join a necessary party, arguing that naming all use plaintiffs before the statute of limitations ran was a "condition precedent" to suit under Section 3-904 and Rule 15-1001.  *Id.*, at 364, 367.

The Maryland Court of Appeals explicitly rejected this argument and allowed the suit to proceed.  It held that "the one-action clause" under Section 3-904 "is not a basis for dismissing an original plaintiff's claim for failure to identify a potential beneficiary as a use plaintiff."  *Muti*, 426 Md. at at 373.  It prevents statutory beneficiaries from initiating multiple suits before the statute of limitations has run and prohibits the entry of judgment where known beneficiaries still have the right to participate in the action.  *Id.*, at 373-76.  It may even require vacatur of an earlier judgment where, for example, a settlement excludes a beneficiary who later attempts to join the action or

litigate a separate one before his or her rights have expired. *Id.*, at 373-76.  But it does not mean that the rights of those who sue are prejudiced by the non-joinder of others.  *Id.*, at 373.

It further held that Rule 15-1001 was procedural, allowing courts to fashion consequences for failure to comply with it "in light of the totality of the circumstances and the purpose of the rule."  *Muti*, 426 Md. at 379-80 (quotation omitted).  Applying that standard to the facts before it, the court allowed the case to proceed.  *Id.*, at 380-82, 384-85.  It noted that there was little or no prejudice to the unnamed use plaintiff because he likely could not establish damages because of his estrangement from the decedent.  *Id.*, at 380.  It also noted that the defendant was not prejudiced because the statute of limitations had run and extinguished the unnamed use plaintiff's claims.  *Id.*  It further held that:

> In cases where the whereabouts of an identified beneficiary are unknown . . . identification of the use plaintiff, a bona fide and reasonably diligent search, and advising the court if the original plaintiff has been unable to find a last known address for the use plaintiff[] ordinarily should satisfy whatever obligations an original plaintiff has to a use plaintiff that can be derived from the CJ § 3-904 or Rule 15-1001.

426 Md. at 382.

All the same considerations apply to this case.  If anything, the facts here are more favorable to allowing the action to proceed

because Ms. Carter at least identified Mr. Carter, Sr. in her complaint. As in *Muti*, "there is no basis for inferring" that Mr. Carter, Sr. was not properly identified or located "for the purpose of hiding the litigation from him or in hope that [Ms. Carter] would increase [her] recovery." *Muti*, 426 Md. at 384.

To the extent Lindsay Defendants suggest that *Carter v. Wallace & Gale Asbestos Settlement Trust* overruled *Muti*, they are wrong. That case affirmed that *Muti* catalyzed an evolution in Maryland wrongful death law and the amendments to Rule 15-1001. 439 Md. 333, 364 (2014). Where it notes that joinder is required in wrongful death claims, it refers to a requirement that use plaintiffs must satisfy to participate in recovery, as established in *Muti* and adopted in Rule 15-1001. *See id.*, at 369-70. Although intervention or joinder is the only way that use plaintiffs can participate in recovery, "it is not a requirement to maintaining suit." 1 Md. Tort Law Handbook § 13.2 (2021); *see Muti*, 426 Md. at 373, 382-84. Nor do the Lindsay Defendants face the risk of future suit by Mr. Carter, Sr. *Muti* and Rule 15-1001 make clear that a statutory beneficiary not named in a wrongful death action cannot participate in or initiate a suit after the statute of limitations has run, even by relation back. *Muti*, 426 Md. at 370-71, 376-78, 377 n.10, 384; Md. Rule 15-1001(d)-(e).

The Lindsay Defendants' and Collinson's motions to dismiss Ms. Carter's wrongful death claims, Counts II, IV, VI, VIII, and X, will be denied.

### D.   Punitive Damages

In the alternative, the Lindsay Defendants argue that Ms. Carter cannot maintain her claim for punitive damages in the wrongful death action because punitive damages are not recoverable in such actions under Maryland law.  (ECF Nos. 12, at 7-8; 24, at 8).  Ms. Carter contends that this is premature because, under Maryland choice of law rules, California law may apply.

The Maryland Wrongful Death Act directs that, "[i]f the wrongful act occurred in another state . . ., a Maryland court shall apply the substantive law of that jurisdiction."  Md. Code Ann., Cts. & Jud. Proc. § 3-903(a); *see also Jones v. Prince George's Cnty.*, 378 Md. 98, 107-08 (2003) ("Under the plain language of the statute, it is the place of the wrongful act, and not the place of the wrongful death, which determines the substantive tort law to be applied in a particular wrongful death action.").  "'Wrongful act' means an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued."  Md. Code Ann., Cts. & Jud. Proc. § 3-901(e).

Ms. Carter cannot bring a claim for punitive damages in her wrongful death action regardless which state the wrongful act

occurred in.  In Maryland, "punitive damages are not recoverable in cases arising under the wrongful death statute." *Johnson v. Balt. Police Dep't*, No. 18-cv-2375-SAG, 2021 WL 1610152, at *5 (D.Md. Apr. 23, 2021) (quoting *Cohen v. Rubin*, 55 Md.App. 83, 101-02 (1983)).  It also "has long been established in California that punitive damages may not be recovered in a wrongful death action." *Ford Motor Co. v. Sup. Ct.*, 1290 Cal.App.3d 748, 751 (1981) (citing *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 450 (1976); *Fox v. Oakland Consol. St. Ry.*, 118 Cal. 55, 67 (1897)); *see also Boeken v. Philip Morris USA, Inc.*, 48 Cal.4th 788, 796 (2010). The Lindsay Defendants' motion to dismiss the claim for punitive damages in the wrongful death action, Count X, will be granted.

## III. Service of Process

On June 14, 2021, this court directed Ms. Carter to file a report regarding the status of service on Defendants.  (ECF No. 7). Her response was incomplete, and several defendants still have not entered an appearance, responded to her complaint, or responded, where applicable, to L.S. Lee's cross complaint, (ECF No. 9).  Ms. Carter and L.S. Lee will be directed file status reports on which companies and individuals are proper defendants in their complaints, the specific steps they have taken to serve process on all those defendants who have not entered an appearance, whether their efforts were successful, and whether they contend that any defendants are in default.  They should make sure to address

whether the proper names for each defendant are used in their complaint captions and whether Barrier Systems should be a separate defendant from Lindsay Transportation.   Ms. Carter should specifically identify the efforts she has taken to serve Green Acres and Penn Line.   Both Ms. Carter and L.S. Lee should specifically identify the efforts they have taken to serve Valmont Transportation, Armorflex, and Dallas James.   L.S. Lee should identify the same as to Valmont Corporation.   In discussing whether those efforts were successful, they should clearly specify how Fed.R.Civ.P. 4(f) has been satisfied for any foreign defendants they contend were successfully served.   Ms. Carter should also address whether Valmont Corporation is in default.

## IV.  Conclusion

For the foregoing reasons, L.S. Lee's motion to join the arguments advanced in the motions to dismiss and strike will be granted.   The Lindsay Defendants' motion to strike Ms. Carter's response in opposition will be denied.   Their partial motion to dismiss will be granted in part and denied in part.   Collinson's partial motion to dismiss will be denied.   Ms. Carter and L.S. Lee will be directed to file status reports as described above. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
